Citrix Online, LLC  May it please the court. Communique asks this court for a new trial because the trial court, over the strenuous objection by Communique, permitted Citrix to put on a classic practicing the prior art defense, at every turn comparing its prior art buddy help product against its accused go-to-my-PC product. Now this court, in many cases since the original Baxter health care case, has said that you can't do that, that it is improper to tell a jury that they may decide either infringement or invalidity by comparing a prior art product to the accused product. Wasn't the jury here instructed on the proper way to determine infringement, that is, that you compare the claims to the accused product? And that in fact occurred, I believe the expert in fact did that kind of a comparison. So why isn't this case distinguished from cases like Baxter and Tate? I'm glad you asked that, Your Honor. First of all, yes, the court did give that instruction, but at the end of the case, not when the court should have when the improper statements were made. And secondly, it is absolutely not true that the plaintiff's expert did any kind of limitation by limitation comparison of this prior art buddy help product with the claims. In fact, if the court turns to the joint appendix citation that Oh, there was. Yes, the expert put on. Doesn't the expert just have to show that there's one limitation that isn't satisfied? No, Your Honor. Well, yes, yes, that is the standout. Of course, if any of the limitations are not present in the prior, in the accused product, the all limitations rule says that there's no infringement. So there was evidence put on about that. But what there was no evidence on in this case was a comparison of the buddy help prior art product to the element to the elements of the claims at issue. So there was no. That's what makes this case different, Your Honors, from the number of cases that have gone before that have talked about practicing the prior art in this. Just to make sure I understand, you're saying that there wasn't a validity analysis. Yes. Right, right. So in this case, there was no reason for any evidence about buddy help to be offered to the trial court. And yet, it was the central focus of the defendant's case. And I would encourage the court to look at the joint appendix reference cited by Citrix when Citrix says that there was a good reason for their expert to talk about buddy help, which was the prior art product. They cite joint appendix 2512 through 2517, saying, oh, well, our expert did an element by element analysis in comparison of buddy help with the claims, and that's why it was legitimate for us to talk about buddy help in this case. If you turn to those pages, Your Honor, you'll see that they consist of the done an element by element comparison. Then another question saying, well, what was the result of that comparison, to which he says, I find the patent to be valid. Then four pages following that in which he talks about the similarities between the buddy help product and the accused go-to-my-PC product. Never once did the expert bother to walk through the elements of the claim against the prior art buddy help product. And in fact, of course, why would they have done that? The expert began by admitting that he found that buddy help did not invalidate the claims. So unlike the several cases that this Court has heard before, in this for buddy help, the prior art product, to have been mentioned to the jury. Can't parties argue in the alternative or present alternative theories to a jury? Sure they can, Your Honor, if they have a legitimate alternative theory. But here, their expert admitted on the stand and their counsel admitted in opening and closing that they had no invalidity case against us under the trial court's claim construction. And, Your Honors, there is no theory to present to a jury that is contrary to the trial court's claim construction. Counsel can't stand up and say, well, I have an invalidity theory just in case the jury discards what the judge says the meaning of the claim terms are, and I'm going to talk about that. No, that cannot enter the courtroom because only a comparison of the claims to the accused product and the claims to the prior art under the trial court's claim construction are proper. And if the defendant had had a problem with the trial court's claim construction, then it should have raised that with the judge. And it should have objected, and it should have raised that on appeal here. So it did not. There is no objection by the an alternative theory of invalidity if the trial court's claim construction was not properly applied. It made no sense, other than as a practicing the prior art defense. And in fact, Your Honor, I think it speaks volumes to look at exactly what the trial court said. I'm sorry, what counsel for Citrix said when we raised this issue with the court on the second day of trial, because we didn't hear, we didn't know they were going to do this practicing the prior art scam until we heard opening statement. We immediately filed a written motion, and the during cases where they might say, you know, push on infringement versus written description, or infringement versus invalidity and view of the prior art as in a, look, if you're going to take this view of the claims, you're going to fall in the scope of the prior art. If you're going to take this view of the claims, then we don't infringe. Isn't that kind of a theme that sometimes brought out in a case? Is your position that that kind of theme can't be relied upon? Absolutely, Your Honor. That was the case in the Zenith Electronics case. But in that case, wasn't the problem that there was no separate analysis? Well, and that's the problem here. Let me read you, Your Honor, if I may, the words, and they're quoted in the opinion in Zenith Electronics. Let me read you the way it was, the improper practicing the prior art defense was phrased there. To the extent the allegedly infringing PDI P2O LCD, and that's the accused product, to the extent the accused product is considered to practice the elements of the claim, then so did the RCA prior art television. Exactly that same formulation, Your Honor, was used in this case to talk to the court and to jury. In fact, when we challenged Citrix trial counsel in explaining his theory of the case to the judge, said, Your Honor, I don't think there is a practicing the prior art issue here. I have the right, he told Judge Loy, to get up and prove that my current product is the same as my prior product, and I can sit down and I win because either their patent is invalid or I don't infringe. He said those very words, and that is what this court has said you cannot do. I don't think so. I think in the cases that have made a statement about practicing the prior art, there have always been additional factors, additional qualifications in a particular case, and I was looking to see because I think it's quite interesting because if, in fact, an accused infringer is doing exactly the same thing they did 10 years before the asserted patent was applied for, that isn't something that is excluded by the rules of evidence. And so there were some fine lines that were drawn in precedent, and it would be helpful if you can tell us how your case of that they again said they were practicing the prior art distinguishes the distinctions if you go back and look at the facts which ended up with statements out of context. That seems to happen very often. And so to understand, in fact, if an accused infringer can never say at the risk of an immediate adverse judgment that I'm doing what I did 10 years before the patent application was filed, that they immediately lose their case. I think that this court's decisions say if you are doing something that you have always done, then you should be able to easily come into court and compare the elements of the claim against the specific features of what you've always been doing and prove an invalidity case. Or if you believe that what you have always been doing doesn't fit within the claim, you can compare what you've done or what you're doing with the elements of the claim in a non-infringement case. What you cannot do is compare your old product to your new product and say, I'm done. You don't even need to look at the claims. But they didn't do that here. I'm sorry? They didn't do that here. They said that they didn't infringe because they didn't perform a particular claim element that was in the claim. They said that, but most of their case was focused on comparing the two products, the old and the new. So if you look at the number of pages where they're talking about the element of the claim that they argue they don't practice, very few pages take up that portion of their case. Most of the case, in fact, the entirety of the testimony by Witness Monkey and Witness Christensen, they're two fact witnesses, was about comparing the old product and the new product. And as we show in our blue brief, their demonstratives were all about setting those two products side by side and arguing that they're the same. That is how counsel for Citrix characterized the case when he was talking to the judge. And it's what he told the jury again and again and again. And this Court has said that just because there might be a basis for finding in the defendant's favor, if the defendant had not done all the things that it shouldn't have done, doesn't mean that the defendant gets a free pass for having done all of those bad things. This Court's decision in the Magnavision v. Bonneau case says exactly that. In that case, the problem was that there was an improper charge about the standards to be applied to invalidity. And the trial court got it wrong, and the defendant capitalized on that and repeated it again and again to the jury. And this Court said, no, even if you could argue perhaps that the patent was invalid on additional grounds beyond those improper grounds you argued, nevertheless, the presence of that improper argument makes it imperative that this Court grant a new trial, because this Court said it would encourage cynical advocacy to permit an improper argument to be foisted off on the jury. And so it's not a question of whether it's possible that you can put together proper evidence to show that there was no infringement. If their use of this improper practicing the prior argument pervaded the trial, then this Court must grant us a new trial. And I would ask to reserve my remaining time for rebuttal. Okay. Thank you, Mr. Schimpp. Mr. Fleming? Good morning, and may it please the Court, Mark Fleming with Christopher Dodge on behalf of Citrix. Judge Leoy carefully considered all of the objections that were made in the Rule 159 motion. She did not address the many arguments that 01 did not put into that motion, and those are waived on appeal, so I won't address them unless the Court has questions. The main argument this morning depends on the assertion which we heard repeatedly and the Court appropriately questioned. The assertion was that we argued non-infringement by comparing the accused product to the prior art. Neither in his briefing nor in his advocacy today has Mr. Shunk cited any point in the record in which we argued that to the jury. Judge Leoy, who sat through the whole trial and was very attentive to this concern, because, as Mr. Shunk says, it was raised throughout, found that we didn't do that, and that was certainly not an abuse of discretion. It was, in fact, correct. Our non-infringement argument was, GoToMyPC does not practice all elements of the asserted claims, and particularly it doesn't have a location facility that creates the communication channel between the host and the remote computers. Now, as part of our invalidity case, we did point out that the communication channel in GoToMyPC happens in the same way as we had done it in the prior ELP BuddyHelp product. And that meant that if the jury found as a factual matter that GoToMyPC practiced that element of the claims, then that would support our argument as a factual matter that BuddyHelp as well practiced that element. That's not a claim construction issue. That is a factual question of infringement with respect to GoToMyPC, anticipation with respect to BuddyHelp. So it's an invalidity argument for BuddyHelp as raised in the alternative Judge Stoll, as you indicated, in the event that we lost on non-infringement. It's a practical application of the principle that the claims are applied the same way for invalidity and for infringement. I'd just say it's important also to remember the context in which this case comes to this Court. The jury was repeatedly told by the judge and by Citrix's own counsel that infringement required comparing the claim elements to the There was a specific instruction Judge Stoll, as you indicated, not to compare the accused products to the prior art when determining infringement. And it wasn't just at the end of the trial. It came throughout the trial. And Judge Leoy specifically told Mr. Schunk on several occasions that if he wanted an additional instruction, he could request one at the end of the trial. The jury was also told openings and closings of counsel are not evidence. And in the midst of trial and in the Rule 59 order afterwards, Judge Leoy found that Citrix's discussion of the prior art was always in the context of arguing invalidity didn't affect the infringement side of the case. And now, because there has been no appeal on substantial evidence, it's undisputed that the non-infringement verdict is amply supported. With all this, the district judge was well within her discretion in denying a new trial. 0-1 cites no case, not one, that provided the relief that they are now asking for, which is a new trial on non-infringement reversing a discretionary judgment by a district court to deny a new trial motion just because of some asserted problem with an invalidity argument. The Zenith case, that was a grant of summary judgment. The district court there had ruled on summary judgment that the patent was invalid and not infringed, and the only reason for it was because the defendant had said, we're just doing what the prior art did. Of course that's wrong. That's not a basis for summary judgment. It's not a basis for JMAL. Nobody's contending that it is. No one contended below that it was. We've never suggested that. But the point is, an abuse of discretion for a district judge to permit a defendant to argue in the alternative to make the argument that was made in this case. I'd just summarize to say that in order to reverse the district court here, I think this court would have to take two steps that are flatly inconsistent with the standard of review. You would first have to decide that Judge Leoy abused her discretion in finding that there was no misconduct at all. Everything Mr. Shunk said about counting the number of pages and what the core theme was, those are quintessential judgments for the district judge to make who had a front row seat for the entire trial. But second, you would also need to find not only that there was prejudice, but that the prejudice was so severe that it couldn't be cured by the correct, unobjected to final jury instructions that Judge Leoy gave. And that would require errant speculation about what was in the mind of the jury and a substitution of the appellate court's judgment for that of the district judge on a core trial management issue. So unless the court has any further questions, I believe the further points are amply ventilated in the briefing. We think this is a straightforward case for affirmance, and we respectfully submit that the court should so rule. Any questions for counsel? Okay. Thank you, Mr. Fleming. Thank you, Your Honor. Mr. Shunk. Very briefly, Your Honors. Let me read to you at Appendix 2894 what the Citrix counsel said in summarizing his case to the jury. He told them the only real question is whether BuddyHelp, that's the prior art device, practices the claims. And Dr. Foster, Dr. Foster has showed us that. He showed us that from the neck down, BuddyHelp and GoToMyPC are the same. We also have Dr. Foster doing an analysis where he went through and made a comparison of BuddyHelp to GoToMyPC and showed every accused functionality. Everything that Your Honor says is covered by the claims finds its way back to BuddyHelp. This case was all about trying to get the jury to avoid comparing the product that was accused to the elements of the claim by telling them that all they needed to do was decide whether BuddyHelp and GoToMyPC were the same. And this court has said that places an improper additional burden on us, the plaintiff, not only to show that the product infringes and that the patent is valid, but also that there is a difference between the current product and the defendant's prior art product. There is no such burden on us. And in this case, Your Honor, why should there be a new trial? It's because in this case there was no justification to even say the word BuddyHelp in court. The counsel and his expert admitted BuddyHelp did not invalidate the patent. So why was it pervasive in this case? Didn't the court say that Citrix was going to discuss BuddyHelp to prevent your client from broadening the reach of the claims? Wasn't that the purpose? So that the claims have been constructed? That's an illegitimate purpose, Your Honor. The trial court has told the jury what the claims mean. It's for the jury to decide whether the claims read on the accused product. What Your Honor may be referring to is the sometimes appropriate use of the prior art to limit, in a doctrine of equivalence case, to limit expansion of the claim scope when a claim of infringement under the doctrine of equivalence has been made. In those cases, yes, you can look to the prior art. But when, in this case, there was no doctrine of equivalence argument being made. It wasn't before the jury. BuddyHelp never should have seen the light of day. Thank you very much, Your Honor. Thank you. Thank you, Booth. That concludes this morning's arguments for this panel.